# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MAURICE COLLINS,

      **Plaintiff,**

  v.                                                                      Case No. 18-CV-1684

ROSE GROCHOWSKI and
FLOYD WEBSTER,

      **Defendants.**

## DECISION AND ORDER

Plaintiff Maurice Collins, a Wisconsin state prisoner who is representing himself, filed this lawsuit under 42 U.S.C. § 1983. This court screened his complaint and allowed him to proceed on Eighth Amendment claims against Defendants Rose Grochowski[1] and Floyd Webster. (ECF No. 10.) Defendants move for summary judgment. (ECF No. 22.) The motion is now fully briefed and ready for this resolution.

### BACKGROUND

The facts are taken from the defendants' proposed findings of fact (ECF No. 24), their declarations in support (ECF Nos. 25–28), Collins's response in opposition to the defendants' proposed findings of fact (ECF No. 33), Collins's supplemental proposed findings of fact (ECF No. 34), his declarations in support

---

[1] The Clerk is directed to correct Defendant's first name on the docket from "Ross" to "Rose."

(ECF Nos. 34 & 35), and the defendants' response to Collins's proposed findings of fact (ECF No. 37). The facts alleged occurred in May and June 2018 and are uncontested, except where otherwise noted.

More than three weeks after submitting his brief in opposition to the defendants' motion and his supporting documents, Collins submitted a second "Brief In Opposition" and a "Reply" to the defendants' responses to his proposed findings of fact. (ECF No. 38 & 39.) Neither the Federal Rules of Civil Procedure nor this court's Civil Local Rules permit these filings, and Collins did not seek permission from the court to file them. To the extent Collins wished to include them as part of his initial response, they are untimely. Civil L. R. 56(b)(2) (providing that all materials filed in opposition to a motion for summary judgment must be filed "within 30 days of service of the motion"); *Hill v. Thalacker*, 210 F. App'x 513, 515 (7th Cir. 2006) (noting that district courts have discretion to enforce procedural rules against pro se litigants). The court will not consider these filings for purposes of this decision.

**A. The Parties and the Alpha Unit**

At all times relevant to this case Collins was an inmate at the Wisconsin Secure Program Facility ("WSPF"), Grochowski was a Licensed Practical Nurse in the Health Services Unit ("HSU") at WSPF, and Webster was a correctional officer at WSPF. (ECF No. 24, ¶¶ 1–3.) Collins transferred to WSPF from Waupun Correctional Institution on May 25, 2016. (*Id.*, ¶ 4.)

Collins has a history of depression and mental illness, including diagnoses of adjustment disorder and anti-social personality disorder. (ECF No. 34, ¶ 5; ECF

No. 25-3 at 23.) While at Waupun, Collins was given a "no Keep on Person," or "no-KOP," restriction, meaning he could not keep medications with him in his cell because he had previously overdosed on medication. (ECF No. 24, ¶ 5; ECF No. 34, ¶¶ 6–7.) The restriction transferred with Collins to WSPF. (ECF No. 24, ¶ 5.) In May 2018, the HSU kept a binder of inmate restrictions and entered the same into the Wisconsin Department of Corrections electronic database, Wisconsin Integrated Corrections System (WICS). (*Id.*, ¶ 6.) The HSU no longer uses the binder and relies only on WICS. (*Id.,* ¶ 24.) The binder is not available or part of the record. (*Id.*, ¶ 25.)

The parties do not dispute that Collins had this medical restriction. According to the defendants, the restriction was included "[a]t some point" in the HSU binder, but Grochowski did not enter the restriction into WICS. (ECF No. 24, ¶ 5.) Collins disputes this fact, asserting that officials at Waupun entered the restriction in his medical file and on WICS on March 22, 2016, after he overdosed on prescription medication while an inmate there. (ECF No. 33, ¶ 5; ECF No. 35, ¶ 37.) But Collins does not allege that inmates have access to WICS or explain how he knows the restriction was entered into WICS. Collins also asserts that his no-KOP restriction "made it known" to all HSU staff that "he was at risk for suicide if provided medication. (ECF No. 34, ¶¶ 8, 11.) The defendants concede that Grochowski was aware of Collins's no-KOP restriction but contend it put her on notice only of his tendency to misuse medications, not his risk for suicide. (ECF No. 37, ¶¶ 5–6, 11.)

In the Alpha Unit, the restricted housing unit at WSPF where Collins was housed at all relevant times, a restriction board lists each inmate's restrictions,

3

including no-KOP medication restrictions. (ECF No. 24, ¶ 31.) The sergeant on first shift in the Alpha Unit prints a list of inmates with restrictions from WICS and writes the inmate's name and restrictions on the board. (*Id.*, ¶ 32.) Security officers check the restriction board before passing out medications to ensure compliance with all medical restrictions. (*Id.*) If an inmate's name is on the board, he should not receive KOP medications. (*Id.*, ¶ 33.) It is unclear if inmates are able to view this board from their cells. Defendants contend that, because Waupun never placed Collins's restriction in WICS, no security officer knew it existed and did not place it on the restriction board. (*Id.*, ¶ 34.) Collins insists his name was listed in the no-KOP section of every restriction board at WSPF, including the one in the Alpha Unit. (ECF No. 33, ¶ 34; ECF No. 35, ¶ 17.) But he alleges only that he once saw what was on the Alpha Unit restriction board when he walked past it on June 5, 2018. (ECF No. 35, ¶ 36.)

Cells in the Alpha Unit also have signs above their doors listing any restrictions of that inmate. (ECF No. 24, ¶ 35.) Medical restrictions are not listed on the sign because they contain confidential information about the inmate. (*Id.*) As a result, the defendants assert that Collins's no-KOP restriction was never listed above his door. (*Id.*) Collins insists, however, that there was "a big memo placed on the wall notifying anyone who came onto the unit" that every Alpha Unit inmate had a no-KOP restriction. (ECF No. 35, ¶ 33; ECF No. 33, ¶ 35.)

**B. Dispensing Medication**

Inmates requesting medication refills place a request in a box on the housing units. (ECF No. 24, ¶ 10.) A registered nurse picks up the mail, sorts out the

4

medication-refill requests, and gives them to an assigned HSU staff member to process. (*Id.*) The staff member reviews the inmate's medication administration record, which shows whether there was a current order for the medication requested. (*Id.*, ¶ 11.) She fills the order if able and designates on the form if the medication is unavailable, in which case she orders more of that medication from the pharmacy. (*Id.*) The staff member also checks WICS and the HSU's binder for the inmate's restrictions. (*Id.*, ¶¶ 11–12.) Each housing unit has a medication cart containing each inmate's medication record, specific medications, and paper medication order used to document medication that staff have given to each inmate in that unit. (*Id.*, ¶ 13.)

After checking the inmate's medical restrictions, an HSU staff member places the medication in the medication cart to be taken to the unit. (ECF No. 24, ¶ 12.) A green bin on the cart is for KOP medication and a white bin is for no-KOP and other controlled medications. (*Id.*, ¶¶ 12, 14.) The staff member, which may or may not be the person who completed the medication refill, fills each bin and takes them to the housing units each evening. (*Id.*, ¶ 14.) According to the defendants, most but not all patients in the Alpha Unit are able to have KOP medications. (*Id.*, ¶ 7.) Collins, however, contends that, at the time of this alleged incident, *all* inmates in the Alpha Unit had no-KOP restrictions. (ECF No. 33, ¶ 7; ECF No. 35, ¶ 33.)

The HSU uses a patient medication profile to document medication administration, including refills to an inmate or housing unit. (ECF No. 24, ¶ 15.) Black ink designates KOP medication, and red ink is used for controlled medications. (*Id.*) An inmate's patient medication profile would be marked "NO KOP" in red ink to

5

remind staff of the no-KOP status and to ensure any medications are placed in the white bin on the medication cart. (*Id.*) The defendants assert that HSU retains the patient medication profile, but the patient may see the form during a requested file review. (*Id.*) The form is not delivered with medications, so security officers normally do not handle it. (*Id.*) Collins contends that correctional officers do handle the patient medication profile. (ECF No. 33, ¶ 15.) But the document to which he cites for this proposition is his "Medication/treatment record," which is used to document staff administration of medication to inmates. (ECF No. 25-1 at 3; *see* ECF No. 27, ¶ 10.) The designation *NO KOP* is written at the top of this form. (ECF No. 25-1 at 3.) Collins's patient medication profile is not included in the record.

### C. Collins's Overdose

On May 26, 2018, Collins submitted a medication request to the HSU, requesting a refill of acetaminophen (Tylenol) pills. (ECF No. 24, ¶ 8.) On May 29, 2018, Grochowski processed the medication request. (*Id.*, ¶ 9; ECF No. 25-1 at 4.) The defendants assert that, on May 26, 2018, Collins's no-KOP restriction was not on WICS. (ECF No. 24, ¶ 16.) Collins contends that it was, but he cites only a document not in the record. (ECF No. 33, ¶ 16.) It is undisputed that Grochowski checked the HSU's binder, which informed her that Collins was on a no-KOP restriction. (ECF No. 24, ¶ 16.) Grochowski wrote "No KOP" in red ink atop the patient medication profile and remembers following proper procedure. (*Id.*, ¶ 17.) Although prison policy was to send Alpha Unit medications in "bubble cards," the acetaminophen sent to Collins was in a bottle containing at least fifty pills. (*Id.*, ¶ 23; ECF No. 33, ¶ 17; ECF

6

No. 35, ¶ 20; ECF No. 35-1 at 20.) (According to Health Services Manager Jolinda Waterman, who is not a defendant, another registered nurse at the time had approved the use of bottles for Alpha Unit inmates without her knowledge. (ECF No. 24, ¶ 23; ECF No. 27, ¶ 13.)) Grochowski states that, most likely, she accidentally placed the bottle of pills in the wrong bin in the medication cart. (ECF No. 24, ¶ 17.) Therefore, the pills were taken to the floor to be delivered to Collins instead of kept on the cart for controlled delivery. (*Id.*, ¶ 18.)

The same day, Webster was working in the Alpha Unit and delivered the evening medication to inmates without no-KOP restrictions. (ECF No. 24, ¶ 26.) The parties agree that Webster checked the restriction board in the Alpha Unit and gave Collins the misplaced medication from the medication cart. (*Id.*, ¶ 28; ECF No. 34, ¶¶ 17–18.) Defendants contend that Webster delivered the medication to Collins without incident. (ECF No. 24, ¶ 28.) Webster swears that no inmate told him he could not keep the medication in his cell, and if one had he would not have dispersed it but would have sought out a sergeant for further direction. (*Id.*, ¶ 29.) Collins contends that his name was on the restriction board and Webster should have known not to give him the medication. (ECF No. 34, ¶ 17.) He asserts that, when Webster gave him the acetaminophen, Collins told him that he could not have medication in his cell and would use the pills to attempt suicide. (*Id.*, ¶ 18; ECF No. 33, ¶ 28; ECF No. 35, ¶ 21.) Webster allegedly responded, "I don't care," gave Collins the pills, and walked away. (ECF No. 34, ¶ 18; ECF No. 33, ¶ 28; ECF No. 35, ¶ 21.) Collins

7

provides an affidavit of another inmate, who corroborates his version of the events. (ECF No. 36, ¶ 3.)

On June 5, 2018, about one week after improperly receiving the acetaminophen, Collins consumed forty-eight of the acetaminophen pills in front of security staff and was taken to a hospital emergency room for treatment of a possible overdose. (ECF No. 24, ¶ 36; ECF No. 34, ¶ 20.) Defendants assert that, despite his allegations about the pills, Collins's vitals did not reflect an overdose of acetaminophen. (ECF No. 24, ¶ 37.) Collins asserts that he did, in fact, overdose on acetaminophen, which caused him numerous temporary and permanent health issues. (ECF No. 34, ¶ 22; ECF No. 33, ¶ 37.) Collins was monitored in the hospital for four hours and then medically cleared and released. (ECF No. 24, ¶ 38; ECF No. 25-1 at 10.) Defendants assert that Collins's no-KOP restriction was entered in WICS two days later, on June 7, 2018. (ECF No. 24, ¶ 39; ECF No. 25-2 at 1.) Collins maintains that the restriction was in WICS before he consumed the pills on June 5, 2018. (ECF No. 33, ¶ 39.)

The Department of Corrections investigated the incident. (ECF No. 24, ¶ 30.) Health Services Manager Waterman was interviewed during the investigation. (*Id.*, ¶ 19.) She reported that Collins's patient medication profile was properly designated "NO KOP" at the top and the medications written in red ink to designate that they should be placed in the white bin on the medication cart. (*Id.*, ¶ 20; ECF No. 25-3 at 9.) (As noted above, Collins's patient medication profile is not part of the record.) Waterman confirmed that Grochowski had signed out the acetaminophen Collins

8

received on May 29, 2018. (ECF No. 24, ¶ 20; ECF No. 25-3 at 9.) She reiterated that the HSU does not issue medication in bottles on restricted housing and that the acetaminophen should have been sent to the cart and not directly to Collins. (ECF No. 24, ¶ 23; ECF No. 25-3 at 9.) Waterman opined that Grochowski was "a newer nurse who made a mistake" by placing the medication in the green bin instead of the white bin used for no-KOP medications. (ECF No. 24, ¶ 21; ECF No. 25-3 at 9.) Because Collins's restriction was not in WICS, Waterman explained, "he didn't show up on our M-meeting for review, which doesn't excuse the mistake." (ECF No. 25-3 at 9.)

Investigators also interviewed Webster. (ECF No. 24, ¶ 30.) He did not recall passing out medication on May 29, 2018, or an inmate telling him that he could not keep medication but insisted he would never have told an inmate "I don't care" if he were so informed. (*Id.*; ECF No. 25-3 at 6.) He said his practice was to check the restriction board in the Alpha Unit, but not the HSU binder, before delivering medication. (ECF No. 24, ¶ 33; ECF No. 25-3 at 6.) If an inmate is not listed on the board, he gives him the medication. (ECF No. 24, ¶ 33; ECF No. 25-3 at 6.)

The investigator also interviewed Collins. (ECF No. 25-3 at 5.) Collins told the investigator that the incident was intentional and that "HSU knows I don't get medication in my cell because I overdosed in 2016. They know that they wanted me to take them. I can prove they know about me not having KOPs." (*Id.*) Collins gave the interviewer his medical papers and pointed out areas that, Collins insisted, "prove [HSU] knew I shouldn't have them." (*Id.*) It is not clear if those papers are in the

9

record. When asked why Collins believed HSU intentionally gave him the pills despite knowing of his previous overdoses, Collins responded, "[B]ecause of my lawsuit." (*Id.*) He decided to take the pills because "that is what they wanted to do[,] I would show them." (*Id.*)

## SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## ANALYSIS

The Eighth Amendment prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). To state a valid Eighth Amendment claim, the inmate must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to

that condition." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless she subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards that risk. *Id.* at 837; *Perez*, 792 F.3d at 776. Neither negligence nor medical malpractice is enough to support an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835–36; *Estelle*, 429 U.S. at 106; *Brown v. Peters*, 940 F.3d 932, 937 (7th Cir. 2019).

Prison officials have a duty to intervene to protect an inmate from acts of self-harm, "up to and including suicide." *See Miranda v. Cnty. of Lake*, 900 F.3d 335, 349 (7th Cir. 2018) (citing *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 665 (7th Cir. 2012)). The Court of Appeals for the Seventh Circuit has reasoned "in numerous cases" that suicide, attempted suicide, and other acts of self-harm pose "a serious harm" that satisfies the objective component of an Eighth Amendment claim. *Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 989 (7th Cir. 2012) (citing cases); *see Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). To satisfy the subjective component, Collins must show that each defendant subjectively knew he "was at substantial risk of committing suicide" and "intentionally disregarded the risk." *Collins*, 462 F.3d at 761 (citing *Matos ex. rel. Matos v. O'Sullivan*, 335 F.3d 553, 557 (7th Cir. 2003)). It is not enough to show that "a prison official *should have been* aware" of the risk; rather, the defendant "'must *both* be aware of facts from which the

11

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000) (emphasis in original)).

The defendants contend that Collins fails to meet the objective component of an Eighth Amendment claim because, they argue, his bloodwork from the hospital shows that he suffered no actual injury. (ECF No. 23 at 10–11.) But the objective component is satisfied not by the injury Collins suffered but by the *risk* of harm presented when he was given the pills he should not have had. (*See* ECF No. 10 at 6.) The defendants do not contest that giving Collins—an inmate with a history of attempted suicide by taking an overdose of pills—a bottle of pills presented an excessive risk that he would take those pills in an attempted suicide.

Thus, the only remaining question is whether each defendant subjectively knew of a risk of harm to Collins's health or safety and intentionally disregarded it by giving Collins the pills. *See Collins*, 462 F.3d at 761.

**A. Grochowski**

The defendants assert that Grochowski at most made a mistake and accidentally put the acetaminophen in the green bin, instead of the white bin, on the medication cart. (ECF No. 23 at 11.) They contend that Collins presents no evidence that Grochowski's act was anything other than a mistake. (*Id.* at 12.) The defendants conclude that "this type of mistake" does not constitute deliberate indifference, so Grochowski is not liable under the Eighth Amendment. (*Id.* at 11–12.)

12

If Grochowski made a mistake, even if she was negligent or grossly negligent in doing so, then she was not deliberately indifferent and did not violate the Eighth Amendment. *See Matos*, 335 F.3d at 557; *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996) (citing *Wilson*, 501 U.S. at 305). If, however, she intentionally placed the medication in the wrong bin, knowing it would go to Collins despite his no-KOP restriction, then she may be liable. *See Collins*, 462 F.3d at 761; *Matos*, 335 F.3d at 557; *Estate of Novack*, 226 F.3d at 529.

It is undisputed the Grochowski fulfilled Collins's medical request for acetaminophen, knew Collins had a no-KOP restriction, and sent a bottle of acetaminophen to him on the medication cart. Collins asserts that Grochowski intentionally sent him the pills, evinced by her sending him a bottle of pills (instead of a bubble pack) and her concession that she knew he had a no-KOP restriction. He also asserts that Grochowski knew the reason Collins had the restriction was his history of drug overdoses.

Collins provides only his own statements as "evidence" that Grochowski knew about his previous overdoses and intentionally sent him a bottle of pills so that he would attempt to overdose on them. But Collins lacks personal knowledge about these events. He was not present when Grochowski filled his medication request, and he does not allege that Grochowski (or any other HSU employee) said anything to him about the pills or Grochowski's intent in sending them to him. Collins cites to Grochowski's response to his interrogatories and "Grochowski's admissions" for support of his statements. (*See* ECF No. 33, ¶¶ 16, 18, 21; ECF No. 34, ¶¶ 8, 12–15.)

But he has not attached those documents to his materials or otherwise placed them into the record.

Collins also told the investigator after the June 5, 2018, incident that he took the pills because "that is what they wanted," and he "would show them." (ECF No. 25-3 at 5.) But he provides no evidence to support that theory. His unsupported statements do not create a genuine dispute of fact on this issue. *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) (quoting *Albiero v. City of Kankakee*, 246 F.3d 927 (7th Cir. 2001)) (noting that "self-serving statements contained in an affidavit will not defeat a motion for summary judgment *when those statements are 'without factual support in the record'*" (emphasis in original)); Fed. R. Civ. P. 56(c)(4) (requiring that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge").

Because Collins provides no factual support for his statements about Grochowski's knowledge or intent, and because he has no personal knowledge about either issue, there is no evidence from which a jury could conclude that her actions were intentional. Therefore, even if Grochowski knew Collins's no-KOP restriction was in place because of his history of drug overdoses, it is undisputed that she made a mistake and accidentally sent Collins a bottle of pills. That mistake is not enough to hold her liable under the Eighth Amendment. She is entitled to summary judgment.

**B. Webster**

The defendants assert that Webster may not be held liable because he only delivered the medication and was unaware of Collins's no-KOP restriction or risk of suicide. (ECF No. 23 at 12.) They contend that Webster cannot be held liable for Grochowski's act of putting the acetaminophen in the wrong bin or for Collins's no-KOP restriction not appearing on WICS or the restriction board in the Alpha Unit. (*Id.*) The defendants assert that, even if Collins did tell Webster he was not supposed to have the medication, that warning was too vague to put Webster on notice of a substantial risk to Collins's safety. (*Id.* at 12–13.)

Collins asserts that his no-KOP restriction was on WICS and the restriction board in the Alpha Unit. As with Collins's statements about Grochowski, however, he provides no evidence in support of those assertions. He alleges only that he once saw his name listed on the Alpha Unit restriction board on June 5, 2018, after he had taken the pills. (ECF No. 35, ¶ 36.) He does not say whether he ever saw his restriction on the board on or before May 29, 2018, the date Webster gave him the pills. Collins also says he saw "a big memo" on the wall in Alpha Unit notifying everyone that all inmates in the unit were not allowed to have pills in their cells. (*Id.*, ¶ 33.) Even assuming the memo was in the Alpha Unit, there is no evidence that Webster read it before giving Collins the pills.

Even if Collins's restriction was listed on WICS, the restriction board, or the memo in Alpha Unit, that would only suggest Webster *should have been* aware of Collins's no-KOP restriction and a possible risk that Collins would misuse the

15

medication if allowed to keep them in his cell. But as stated above, "should have been aware" would not be enough to hold Webster liable under the Eighth Amendment. *See Collins*, 462 F.3d at 761.

Having said that, Collins says he told Webster, "I'm not supposed to have those" because he would use them to commit suicide, to which Webster responded, "I don't care," and walked away. Another inmate who was present corroborates Collins's version of the facts. If Collins so informed Webster, then Webster *would have been* aware of the risk to Collins's health by giving him the pills to keep on his person. In that scenario, Webster could be found deliberately indifferent to Collins's risk of suicide. A reasonable jury could conclude that Collins told Webster not to give him the pills because he would use them to attempt suicide and that Webster nonetheless gave Collins the pills.

The defendants contend that Collins's notification about the pills was too vague to put Webster on notice of a substantial risk to his health. But Collins asserts that he told Webster not only that he was not supposed to have the pills but also that he could not have them because he would use them to attempt suicide. (ECF No. 34, ¶ 18; ECF No. 33, ¶ 28; ECF No. 35, ¶¶ 20–21.) If the events occurred as Collins says, then Webster had specific notice of the threat to Collins's health and gave Collins the pills anyway. Under those circumstances, he could be liable under the Eighth Amendment. A jury must decide these questions. Summary judgment is therefore inappropriate for Webster.

**C. Qualified Immunity**

The defendants contend that, even if there is a genuine dispute of material fact, Webster is entitled to qualified immunity. (ECF No. 23 at 15–16.) They assert that there is no law clearly supporting "Collins' Eighth Amendment claim for failure to protect him from a serious risk of self-harm where his access to Tylenol was the result of a simple mistake and neither defendant had actual knowledge of any risk of harm." (*Id.*)

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Figgs v. Dawson*, 829 F.3d 895, 905 (7th Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted). Qualified immunity is an affirmative defense. Once raised, the plaintiff must show that the defendants violated his rights and that the right at issue was clearly established at the time of the violation. *Pearson*, 555 U.S. at 232. The law is "clearly established" only if "various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand." *Figgs*, 829 F.3d at 905 (quoting *Campbell v. Peters*, 256 F.3d 695, 701 (7th Cir. 2001)) (internal quotation marks omitted). "The clearly established law must be 'particularized' to the facts of the case.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). It is not necessary that there be cases "directly

on point," but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 551 (internal quotation marks omitted).

Collins has presented facts that, if believed by a jury, would establish that Webster violated his Eighth Amendment rights. There is no dispute that Collins's suicidal tendencies created an objective risk of serious harm. *See Miranda*, 900 F.3d at 349; *Estate of Miller*, 680 F.3d at 989 ("This Court has stated in numerous cases that, 'suicide is a serious harm.'"); *Davis v. Gee*, No. 14-CV-617-WMC, 2017 WL 2880869, at *4 (W.D. Wis. July 6, 2017) (quoting *Farmer*, 511 U.S. at 834) (noting that, to show a constitutional violation from failing to prevent an inmate's ingestion of pills, "there must be evidence that taking the pills presented an 'objectively, sufficiently serious' risk of 'serious damage to his future health'"). Collins has presented evidence showing that he told Webster he would try to kill himself if given the acetaminophen, and yet Webster gave Collins the pills anyway. These facts, if proven, would show that Webster was subjectively aware of the risk to Collins's health in giving him the pills and disregarded that risk.

This circuit's case law clearly establishes that Webster's actions, if proven, would constitute an Eighth Amendment violation. *See Estate of Clark v. Walker*, 865 F.3d 544, 551–52 (7th Cir. 2017) (citing *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003)) ("[Plaintiff prisoner's] right to be free from deliberate indifference to his risk of suicide while he was in custody was clearly established at the time of his death in 2012."); *cf. Wells v. Govier*, No. 18-CV-693-JDP, 2019 WL 7281935, at *6–*7, *9 (W.D. Wis. Dec. 27, 2019) (denying summary judgment and qualified immunity to

prison officials who in 2018 gave inmate acetaminophen because a reasonable jury could conclude that they knew inmate had a no-KOP restriction based on his "history of attempts to harm himself by overdosing on medication"). Webster is thus not entitled to qualified immunity.

Because the court is granting summary judgment to Grochowski on the merits, she does not need qualified immunity. *Sierra-Lopez v. Cnty.*, No. 17-CV-1222-PP, 2019 WL 3501540, at *10 (E.D. Wis. July 31, 2019) (citing *Viero v. Bufano*, 925 F. Supp. 1374, 1387 (N.D. Ill. 1996), and *Antepenko v. Domrois*, No. 17-CV-1211, 2018 WL 6065347, at *6 (E.D. Wis. Nov. 20, 2018)).

## CONCLUSION

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (ECF No. 22) is **GRANTED in part and DENIED in part**. Summary judgment is granted for defendant Rose Grochowski and denied for defendant Floyd Webster.

**IT IS FURTHER ORDERED** that Rose Grochowski is **DISMISSED** from this case.

Dated at Milwaukee, Wisconsin this 30th day of January, 2020.

WILLIAM E. DUFFIN
U.S. Magistrate Judge